United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Avago Technologies General IP PTE
Ltd., et al.,

                Plaintiffs,

  v.

Elan Microelectronics Corp.,

                Defendant.

_____/

NO. C 04-05385 JW

**REVISED CLOSING JURY
INSTRUCTIONS**

      Members of the jury, as I read the Closing Instructions to you, I made changes from the written text.  These Revised Closing Instructions give you those changes in writing.  I am enclosing a document which shows the changes.

      Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case.  Copies of these instructions have been made available for you to consult.

      As I have instructed you, it is your duty to find the facts from all the evidence in the case.  To those facts you must apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  In deciding the case you must not be influenced by any prejudices or sympathy.  This means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the case.

1      You must follow all of my instructions.  You must not single out some and

2  ignore others; they are all important.

3      The evidence from which you are to base your verdict consists of: the sworn

4  testimony of witnesses, both on direct and cross-examinations, regardless of who

5  called the witness; the exhibits which have been received into evidence; the facts

6  which have been admitted during pre-trial proceedings; and any facts to which the

7  lawyers have agreed or stipulated.  You have received as evidence responses by a

8  party to "Request for Admissions."  All facts which are admitted in such a response

9  must be accepted as conclusively established.  The deposition testimony of one or

10  more witnesses have been read or displayed.  Deposition testimony is given under

11  oath.  You should give it the same force and effect as testimony given here in trial.

12      You must decide all questions of fact in this case from the evidence received in

13  this trial and not from any other source.  You must not make any independent

14  investigation of the facts or the law or consider or discuss facts as to which there is no

15  evidence.  This means, for example, that you must not perform any research on your

16  or consult reference works for additional information.  You must also not conduct any

17  experiments, including experiments on any exhibits provided to the jury, such as

18  exemplar optical mice.

19      If there is a conflict between the testimony of one or more witnesses and that of

20  other witnesses, you may have to decide which testimony to believe and which

21  testimony not to believe.  You may disbelieve all or any part of any witness'

22  testimony.  In making that decision, you should take into account a number of factors

23  including the following:

24      (1)   Was the witness able to see, or hear, or know the things about which that

25            witness testified?

26      (2)   How well was the witness able to recall and describe those things?

27      (3)   What was the witness' manner while testifying?

United States District Court

For the Northern District of California

(4)     Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5)     How reasonable was the witness' testimony when considered in light of all the evidence in the case?

(6)     Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The persuasiveness of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater persuasiveness than that of a larger number on the other side.

In this trial, one or more witnesses have testified through an interpreter. You must not make any assumptions about a witness based solely upon the use of an interpreter to assist that witness. The evidence to be considered by you is only that provided through the court certified interpreter. Although some of you may know Mandarin, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

You have heard testimony from individuals who, because of education or experience, have become experts in a particular field. The law permits experts to state opinions about matters in the field of their expertise and they are permitted to state the reasons for those opinions. Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you

3

think it deserves.  In deciding whether to believe an expert's testimony, you should consider the expert's training and experience, the facts the expert relied on, and the reasons for the expert's opinion.

Evidence may be direct or circumstantial.  Direct evidence is testimony about an event by a witness who personally saw or heard or performed the event.  Circumstantial evidence is indirect evidence about an event; that is, it is direct evidence that one event took place from which one can infer that another event, which was not itself directly observed, took place.  You are to consider both direct and circumstantial evidence.  The law permits you to consider direct and circumstantial evidence to be of equal persuasiveness.  However, it is for you to decide how persuasive to consider any evidence.

During the trial, I have ordered that evidence be stricken from the record and instructed you to disregard the evidence.  When you are deciding the case, you must not consider evidence which I told you to disregard.  I have admitted evidence for a limited purpose.   At the time the evidence was admitted, I told you the limited purpose for which the evidence was being admitted.  You must consider that evidence for that limited purpose only.

During your deliberations, you will have paper copies of the documentary evidence.  Some of the exhibits were in the form of computer-generated slides or animations.  Some were received in evidence and some were not.  With respect to electronic evidence, we will provide you with a computer on which to view the exhibit.  I have direct Ms. Garcia, the Deputy Clerk to assist you in understanding how to operate the equipment.  You will also be provided with a list of all exhibits which have been received in evidence.  If you need additional equipment or supplies, you may make a request by sending a note.

The parties to this case are corporations.  All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you

1   as any party.  Under the law, a corporation is considered to be a person and like a
2   person, a corporation is responsible for its conduct.  A corporation acts through its
3   employees, agents, directors, or officers.  During these instructions when I speak of
4   the conduct of Avago or Elan, I am referring to the conduct of their respective
5   employees, agents, directors, and officers performed within the scope of their
6   authority.

7                          **SUMMARY OF THE CONTENTIONS**

8          At the beginning of the case, I gave you instructions on the claims which were
9   being made by Avago and the defenses which were being made by Elan.  Some of the
10  claims and defenses I described at the beginning of the trial are no longer before you.
11  You should not be concerned as to why a claim or defense has been removed from
12  your consideration.  Your responsibility is the decide the issues which are now being
13  submitted to you and ignore any others.

14         Avago seeks money damages from Elan for allegedly infringing Claim 4 of the
15  '780 Patent by actively inducing another company to infringe Claim 4.  Specifically,
16  Avago contends that Elan infringes Claim 4 by inducing another company to make,
17  use, import into, offer to sell or sell in the United States an optical mouse that contains
18  the OM01 and OM02 sensors.  During these instructions, I will refer to these optical
19  mice products as the "accused products."

20         Elan denies that it has actively induced another company to infringe Claim 4.

21                          **INTERPRETATION OF CLAIM**

22         Deciding whether Avago has proved that Elan has actively induced another to
23  infringe involves a series of steps.  The first step is to decide what is covered by Claim
24  4 of the '780 Patent.  Based on what is covered by Claim 4, the next series of steps
25  involve deciding whether Avago has proved that Elan or another company made,
26  used, sold, offered for sale in the United States or imported into the United States a
27  product covered by Claim 4.

28

United States District Court
For the Northern District of California

5

1    Under the law, it is the responsibility of the Judge to decide what is covered by

2    the patent.  The Judge reads the patent claims and the patent specification, and may

3    also read the file history that contains correspondence and other documents exchanged

4    between the patent applicants and the Patent and Trademark Office, and review other

5    material.  Based on that information, the Judge interprets or "construes" definitions of

6    the words and phrases used in the patent claim and gives a decision of the scope of the

7    patent claim.  This is called the "claim construction" or "claim interpretation."

8    You must accept the Court's interpretations as correct.  My interpretation of

9    what is covered by Claim 4 should not be taken by you as an indication that I have a

10   view regarding whether Avago has proved that Elan infringed Claim 4.

11   During the trial, I gave you instructions regarding the meaning of words and

12   phrases used in Claim 4.  I will now give to you the definitions you must follow in

13   deciding infringement.

14   Some of the words and phrases for which I will give an interpretation overlap

15   and involve other words and phrases.  Instead of reading and re-reading the entire

16   language of Claim 4, to aid you in following these instructions, I have placed the

17   language of Claim 4 in footnotes to these instructions and I will read the pertinent

18   language from Claim 4 that I have interpreted.  Some of the interpretations I will give

19   you in these closing instructions will be different from those which I gave to you

20   earlier.  You are instructed to apply my final interpretations.

21   To assist you in following my instructions on the interpretation of Claim 4, I

22   will divide Claim 4 into "elements."  The parties have given their own labels to these

23   divisions.  The fact that the labels that I use might be different from those used by the

24   parties is not intended to reflect any rejection of their labels.  The labels are solely to

25   assist you in following the Court's interpretations of what is covered by Claim 4.

26

27

28

**United States District Court**
For the Northern District of California

6

**United States District Court**
For the Northern District of California

**PREAMBLE**

Claim 4 of the '780 Patent covers the invention of a "hand held pointing device for a computer system." This device is popularly called a computer mouse. The invention in Claim 4 is an optical computer mouse.

Claim 4 is introduced by a <u>preamble</u>.[1] The phrase "hand held pointing device for a computer system" means: an optical mouse. The preamble concludes with the phrase "the pointing device comprising" and is followed in the body of the Claim with a recital of elements. With respect to patents, the word "comprising" means "including the following elements but not excluding others." If you find that an accused product includes all of the elements in Claim 4, the sole fact that the accused product might include additional elements would not mean that the accused product does not infringe Claim 4.

**HOUSING ELEMENTS**

The invention recited in Claim 4 comprises <u>housing elements</u>.[2]

As used in Claim 4, the phrase "bottom surface" means: the exterior boundary which serves the function of facilitating movement of the mouse against a work surface.

The phrase "top surface" means: the exterior boundary which serves the function of receiving contact with the human hand.

---

[1] "We claim . . .4. A hand held pointing device for a computer system, the pointing device comprising:. . ."

[2] "a housing having a bottom surface that moves against a work surface; the housing also having a top surface shaped to receive the human hand;

the housing also having a skirt connecting a perimeter of the bottom surface with the top surface;

the housing also having a first axis extending generally in the direction from where the heel of the hand rests on the top surface to where the middle finger rests on the top surface, and a second axis perpendicular to the first, both axes parallel to the bottom surface;

an aperture in the bottom surface;

7

United States District Court

For the Northern District of California

1    The word "skirt" means: a region of the housing between the bottom surface

2   and the top surface which functions to connect the perimeter of the top surface with

3   the perimeter of the bottom surface.

4    A "perimeter" of a surface is: the outside edge of the surface. There is no

5   limitation of Claim 4 which requires that the skirt be a separate or independent part.

6              **ILLUMINATION ELEMENTS**

7    The invention recited in Claim 4 comprises <u>illumination elements</u>.[3]  As used in

8   Claim 4, the phrase "desktop surface" means: work surface.

9             **MOTION DETECTION ELEMENTS**

10    The invention recited in Claim 4 comprises <u>motion detection elements</u>.[4]

11    A "circuit" is: an arrangement of interconnected electronic components that is

12   capable of performing specified functions. The "optical motion detection circuit"

13   must be mounted within the interior of the housing, optically coupled to the

14   illuminated work surface and capable of producing motion signals. "Motion signals"

15

16   _____

17       [3] a source of illumination mounted within the interior of the housing, proximate
     the aperture, that illuminates a portion of the work surface opposite the aperture and
18   having surface height irregularities forming a micro texture with feature sizes in the
     range of about five to five hundred microns, the illumination producing a pattern of
19   highlights upon surface height irregularities that extend out of the desktop surface and
     that intercept the illumination and of shadows upon surface height irregularities that
20   extend into the desktop surface and whose illumination is blocked by adjacent surface
     height irregularities that are illuminated;

21       [4] an optical motion detection circuit mounted within the interior of the housing
     and optically coupled to the pattern of highlights and shadows from the surface height
22   irregularities of the illuminated portion of the work surface, the optical motion
     detection circuit producing motion signals indicative of motion in the directions along
23   the first and second axes and relative to the surface height irregularities of the
     illuminated portion of the work surface;
24       wherein the optical motion detection circuit comprises a plurality of photo
     detectors each having an output, a memory containing a reference frame of digitized
25   photo detector output values and a sample frame of digitized photo detector output
     values obtained subsequent to the reference frame, and further wherein a plurality of
26   comparison frames, each being a shifted version of one of the reference frame or the
     sample frame, is correlated with the other of the reference frame or the sample frame
27   to produce a corresponding plurality of correlation values and ascertain motion in the
     directions along the first and second axes;

28

means: data indicative of a motion of the optical mouse along axes on the work surface.

The motion detection elements, include an internal preamble, "wherein the optical motion detection circuit comprises." As I previously instructed you, the word "comprises" means: including the following elements but not excluding others. If you find that an accused product includes all of the elements of which the "optical motion detection circuit" is comprised, the mere fact that the accused product might include additional elements would not mean that the accused product does not infringe Claim 4.

As I have previously instructed you, the phrase, "wherein the optical motion detection circuit comprises a plurality of photo detectors each having an output, a memory containing a reference frame of digitized photo detector output values" means: a circuit which comprises a plurality of photo detectors and a memory device, the circuit being capable of converting the output from the plurality of photo detectors from analog values to computer storable digital values, and capable of storing some or all of the digitized output values in the memory device of the circuit as a reference frame. I will now give you further instructions on this element.

As used in this element, "plurality of photo detectors" means: numerous photo detectors.

The phrase, "photo detector" means: a semiconductor device which generates an electrical signal in response to light.

The phrase, "each having an output" means: there is a one-to-one connection between each photodetector and an input to something else.

The phrase, "a memory" means: a device where information can be stored and retrieved.

The word, "frame" means: a single image in a sequence of images.

The phrase, "a memory containing" means: a memory capable of storing.

United States District Court

For the Northern District of California

1      The optical motion detection circuit comprises a memory capable of storing

2  "digitized photo detector output values."  A skilled artisan would understand that in

3  order for the circuit to comprise a memory capable of storing "digitized" values, the

4  circuit must be capable of converting analog values to digital values in a form which

5  makes them capable of being stored in a  memory.  Claim 4 is not limited to any

6  particular "digitization" process or components.  The phrase "digitized photo detector

7  output values" is a description of the thing the memory must be capable of storing and

8  is not a limitation to a particular process for digitization.

9      In being capable of storing digitized photo detector output values, Claim 4 does

10  not contain a requirement that the circuit have a one-to-one correspondence between

11  the analog photo detector outputs and the digitized values which the circuit must be

12  capable of storing in memory.

13      Claim 4 does not contain any limitation that the circuit be capable of

14  maintaining the digital value in a state such that it could be converted back to an

15  analog value.

16      As used in Claim 4, the phrase, "a plurality of comparison frames, each being a

17  shifted version of one of the reference frame or the sample frame, is correlated with

18  the other of the reference frame or the sample frame to produce a corresponding

19  plurality of correlation values and ascertain motion in the directions along the first and

20  second axes" means: at least two frames, each generated by shifting a sample frame or

21  a reference frame, are compared with the other of a reference frame or a sample frame

22  to provide the degree to which the frames are related.  Such correlations produce

23  numerical representations of the degree of similarity between the frames.  The phrase,

24  "plurality of correlation frames" means: numerous correlation frames.  Such

25  correlations are also used to ascertain motion in the directions along the first and

26  second axes.

27

28

United States District Court
For the Northern District of California

**ARITHMETIC COMPARISON MECHANISM ELEMENTS**

The invention in Claim 4 comprises <u>arithmetic comparison mechanism elements.</u>[5]

As used in Claim 4, the phrase, "an arithmetic comparison mechanism coupled to the plurality of correlation values, and wherein the motion signals are not output to the computer system whenever a correlation surface described by the plurality of correlation values fails to exhibit a selected curvature" means: a device that executes an algorithm which determines a surface shape by calculating numerous correlation values and that blocks the transmission of the motion data to the computer system if the result of the algorithm is that the surface shape is not a suitable curvature.

**INDUCING INFRINGEMENT**

I will now instruct you on the rules you must follow in deciding whether Avago has proven that Elan has induced infringement of Claim 4 of the '780 Patent.

As you heard from the video presentation which was played during my Opening Instructions, a patent is granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. A company can infringe a patent claim by inducing another company to infringe the claim.

Elan is liable for infringement of Claim 4 if Avago proves by a preponderance of the evidence that Elan actively induced another company to infringe Claim 4. In

---

[5] and an arithmetic comparison mechanism coupled to the plurality of correlation values, and wherein the motion signals are not output to the computer system whenever a correlation surface described by the plurality of correlation values fails to exhibit a selected curvature.

order to recover based on induced infringement, Avago must have proven by a preponderance of the evidence the following:

1.  That another company directly infringed Claim 4, that is, another company made, used, sold, imported, or offered for sale in the United States a product covered by Claim 4, literally or under the doctrine of equivalents;

2.  That Elan intentionally took an action or series of actions that actually induced the direct infringement by the other company;

3.  That Elan was aware of the '780 Patent; and

4.  That Elan knew or should have known that its actions would cause direct infringement by the other company.

I will discuss some of these elements further.

The first element which Avago must prove is that another company directly infringed Claim 4.  A company can directly infringe by producing a product that literally infringes Claim 4 or that does so under the doctrine of equivalents.  Let me explain literal infringement and infringement under the doctrine of equivalents.

**LITERAL INFRINGEMENT**

To decide whether an accused product literally infringes Claim 4, you must compare the accused product with Claim 4 and determine whether every element of Claim 4 is included in the accused product.  If so, the accused  product literally infringes Claim 4.  If, however, the accused product does not have every requirement in Claim 4, the accused product does not literally infringe Claim 4.  Literal infringement is not avoided because it is possible to operate an accused product sometimes in a non-infringing mode.

**DOCTRINE OF EQUIVALENTS**

If you decide that the accused product does not literally infringe Claim 4, you must then decide whether that product infringes Claim 4 under what is called in patent law the "doctrine of equivalents."

United States District Court<br>For the Northern District of California

12

1   Under the doctrine of equivalents, an accused product infringes a patent claim

2   even if the product includes one or more parts that are not identical to one or more

3   elements of the patent claim, if the accused product contains parts which are

4   equivalent to those elements.  If the product is missing parts that are not identical to or

5   equivalent to even one element of the patent claim, the product cannot infringe the

6   claim under the doctrine of equivalents.  Thus, in making your decision under the

7   doctrine of equivalents, you must look at each individual element of Claim 4 and

8   decide whether the accused product has either an identical or equivalent part to that

9   claim element.

10   A part of a product is equivalent to an element of a patent claim if a person of

11   ordinary skill in the field would think that the differences between the part and the

12   element was not substantial as of the time of the alleged infringement.

13   One way to decide whether any difference between an element of Claim 4 and a

14   part of an accused product is or is not substantial, is to consider whether, as of the

15   time of the alleged infringement, the part of the accused product performed

16   substantially the same function, in substantially the same way, to achieve substantially

17   the same result as the patent claim element.

18   In deciding whether any difference between a claim element and an accused

19   product is or is not substantial, you may consider whether or not, at the time of the

20   alleged infringement, persons of ordinary skill in the field would have known of the

21   interchangeability of the part with the claimed element.  The known interchangeability

22   between the claim element and the part of the product is not necessary to find

23   infringement under the doctrine of equivalents.  However, known interchangeability

24   may support a conclusion that the difference between the part in the product and the

25   claim element is not substantial.  The fact that a part of the product performs the same

26   function as the claim element is not, by itself, sufficient to show known

27   interchangeability.

28

United States District Court
For the Northern District of California

You have heard evidence that Avago sells optical mouse sensors.  You also have heard evidence that Avago sensors do not practice Claim 4 of the '780 Patent. Whether or not Avago practices Claim 4 of the '780 Patent is not relevant to your determination of whether accused products containing Elan sensors infringe.  You are not to compare commercial products sold by the parties with one another. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing products with Elan sensors with a product commercialized by Avago.  The only proper comparison is a comparison of an optical mouse using Elan OM01 or OM02 sensors with Claim 4 of the '780 Patent, as the Claim has been interpreted by the Court.

Although the specification of a patent might contain a description of an embodiment of a patent claim, the scope of the patent claim is not limited to that embodiment.  For example, Figure 3 of the '780 Patent is a drawing of a housing of a computer mouse.  Claim 4 contains words and phrases which describe the housing elements.  The scope of what is covered by the housing elements of  Claim 4 is not limited to a mouse housing identical to what is shown in Figure 3.  In deciding whether or not the housing elements of Claim 4 are present in an accused product, you should not compare Figure 3 with the accused product.  Instead, you must compare the description of the housing elements that is contained in Claim 4, as the words of that description have been interpreted by the Court, with the accused product and decide whether or not all of those elements or their equivalents are present in the accused product.

**BURDEN OF PROOF**

Avago has the burden of establishing that Elan induced infringement by another company by a preponderance of the evidence.  This means that Avago has to produce evidence which, considered in light of all the facts, leads you to believe that what Avago claims is more likely true than not true.  To put it differently, if you were to

14

imagine that the persuasiveness of evidence could be weighed on scales, and you could put evidence tending to prove, for example, the likelihood that Elan induced infringement on one side of a scales and evidence tending to prove the likelihood that Elan did not induce infringement on the other side of the scales, the evidence on the "likelihood of inducing infringement" side would have to make the scale tip in Avago's  favor.  If you evaluate the evidence and you find that the evidence is evenly balanced between the two sides, your decision on inducing infringement must be in favor of Elan.  If you evaluate the evidence and you decide that what Avago claims is more likely true than not true, in other words, if the scale tips to Avago's side–even slightly, then your decision should be in favor of Avago.

### WILLFUL INFRINGEMENT

If you find that Elan induced another company to infringe Claim 4, either literally or under the doctrine of equivalents, you are then asked to decide if Avago has proved that the Elan's inducing of infringement by the other company was willful by clear and convincing evidence.  In order to be entitled to your verdict that Elan's inducing infringement was willful, Avago must persuade you that it is highly probable that prior to the filing of this action, Elan acted with reckless disregard of Claim 4 of the '780 Patent.  "Highly probably" is a higher standard of proof that by a preponderance of the evidence.

To demonstrate such "reckless disregard," Avago must satisfy a two-part test. The first part of the test is objective.  Avago must persuade you that Elan acted despite an objectively high likelihood that its actions would induce infringement of a valid and enforceable patent claim.  The state of mind of Elan employees are not relevant to this inquiry.  You should focus on whether a reasonable person in the position of an Elan employee, after learning of the patent, could have reasonably believed that he or she was not inducing infringement of Claim 4 or if he or she believe he or she was inducing infringement, whether such a reasonable person could have reasonably

believed that Claim 4 was invalid.  If a reasonable person in the position of the Elan employee could not have held such belief, then you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Elan's employees.  Avago must persuade you that Elan actually knew, or it was so obvious that Elan should have known, that its actions would induce infringement of a valid and enforceable patent.  In deciding whether Elan actually knew that its actions constituted inducement of infringement of a valid patent, you may consider evidence of the knowledge or state of mind of Elan's employees.  However, you may not consider the knowledge or state of mind of third parties such as employees of Peripheral Imaging Corporation, unless you find that such knowledge or state of mind was communicated or otherwise known to Elan employees.

In deciding whether Elan acted with reckless disregard for Avago's patent, you should consider all of the facts surrounding the alleged inducement of infringement including, but not limited to the following:

1.  Whether Elan acted in a manner consistent with the standards of commerce for its industry; or

2.  Whether Elan relied on a legal opinion that was well-supported and believable and that advised Elan (a) that the product did not infringe Avago's patent or (b) that the patent was invalid.  You have heard evidence that Elan obtained one or more legal opinions.  A company is not obligated to obtain a legal opinion.

### DAMAGES

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Elan induced infringement of  Claim 4 of the '780 Patent, you must then determine the amount of money damages to be awarded to Avago to compensate it for the infringement.

1      The amount of those damages must be adequate to compensate Avago for the

2 infringement.  A damages award should put the patent holder in approximately the

3 financial position it would have been in, had the infringement not occurred, but in no

4 event may the damages award be less than a reasonable royalty.  You should keep in

5 mind that the damages you award are meant to compensate the patent holder and not

6 to punish an infringer.

7      Avago has the burden to persuade you of the amount of its damages.  You

8 should award only those damages that Avago more likely than not suffered.  While

9 Avago is not required to prove its damages with mathematical precision, it must prove

10 them with reasonable certainty.  Avago is not entitled to damages that are remote or

11 speculative.

12      Avago can recover damages if it can show to a reasonable probability that, if

13 there had been no infringement, Avago would have been able to charge higher prices

14 for some of its products.  In that case, you may also award as damages the amount

15 represented by the difference between the amount of profits that Avago would have

16 made by selling its product at the higher price and the amount of profits Avago

17 actually made by selling its product at the lower price that Avago charged for its

18 product.  This type of damage is referred to as price erosion damage.

19      If proven, damages may be awarded for either price erosion damages or

20 reasonable royalty damages sustained on or before December 1, 2005.  You may not

21 award both for that period of time.  If proven, damages may also be awarded for

22 reasonable royalty damages sustained after December 1, 2005.  No damages may be

23 awarded for price erosion damages sustain after December 1, 2005.

24      If Avago has not proved its claim for lost profits, or has proved its claim for lost

25 profits for only a portion of the infringing sales, then Avago should be awarded a

26 reasonable royalty for all infringing sales for which it has not been awarded lost

27 profits damages.

28

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

You may not limit or increase the royalty based on the actual profits Elan made.

## ARGUMENT OF COUNSEL

I will now permit counsel for the parties to make their closing arguments. Counsel for the Plaintiff will make a closing argument, followed by the closing argument by counsel for the Defendants. If Plaintiff's counsel does not use all the allotted time, counsel for the Plaintiff will be permitted a brief rebuttal argument and then I will have some brief additional instructions for you with respect to the conduct of your deliberations. Remember, statements of the attorneys are not evidence.

[FOLLOWING CLOSING ARGUMENT]

## DUTY TO DELIBERATE

When you retire, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

**United States District Court**
For the Northern District of California

18

1    Each of you must decide the case for yourself, but you should do so only after

2 you have considered all the evidence, discussed it fully with the other jurors, and

3 listened to the views of your fellow jurors.

4    Do not be afraid to change your opinion if the discussion persuades you that

5 you should.  But do not come to a decision simply because other jurors think it is

6 right.

7    It is important that you attempt to reach a unanimous verdict but, of course,

8 only if each of you can do so after having made your own conscientious decision.  Do

9 not change an honest belief about the weight and effect of the evidence simply to

10 reach a verdict.

11    During the course of your deliberations, you may take rest breaks or lunch

12 breaks as you wish.  Since we will be standing by pending your deliberations, please

13 send us a note as to what your schedule will be.  During any break, do not deliberate

14 further upon the case.  Cease all deliberations until your foreperson has brought you

15 back into session with all of you present.

16                          **RETURN OF VERDICT**

17    After you have reached unanimous agreement on a verdict, your presiding juror

18 will fill in the form that will be given to you.  Sign and date the form and advise the

19 Ms. Garcia, the Deputy Clerk, that you are ready to return to the courtroom.

20                     **COMMUNICATION WITH COURT**

21    If it becomes necessary during your deliberations to communicate with me, you

22 will find a form for that purpose included in the material sent into the jury room.  Any

23 one of you may communicate with me by filling out the form.  Bring it into my

24 Chambers and give it to me or a member of my staff.  No member of the jury should

25 ever attempt to communicate with me except by a signed writing; and I will

26 communicate with any member of the jury on anything concerning the case only in

27 writing, or orally here in open court.  Remember that you are not to tell anyone—

28

19

1    including me—how the jury stands, numerically or otherwise, until after you have

2    reached a unanimous verdict or have been discharged.

3

4

5    Dated:  April 30, 2009

6                                                                    JAMES WARE
                                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan J. Heinrich aheinrich@irell.com
David Craig McPhie dmcphie@irell.com
Elizabeth Hannah Rader elizabeth.rader@alston.com
Frank G. Smith frank.smith@alston.com
Hsin-Yi Cindy Feng cindy.feng@alston.com
Jonathan Robert Lange jlange@irell.com
Morgan Chu mchu@irell.com
Richard Elgar Lyon rlyon@irell.com
Samuel Kai Lu slu@irell.com
Sang Hui Michael Kim Michael.Kim@alston.com
Thomas Hunter Jefferson hunter.jefferson@alston.com
Yitai Hu yitai.hu@alston.com

**Dated:  April 30, 2009**                    **Richard W. Wieking, Clerk**


                                              **By:____/s/ JW Chambers_____**
                                                  **Elizabeth Garcia**
                                                  **Courtroom Deputy**

**United States District Court**
For the Northern District of California